UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIELLE GRANDRIMO,

                          Plaintiff,

v.                                                    CASE NO.: 8:10-CV-964-T-27MAP

PARKCREST HARBOUR ISLAND CONDOMINIUM
ASSOC., INC., USAA CASUALTY INSURANCE
COMPANY, FIDELITY NATIONAL PROPERTY
AD CASUALTY INSURANCE COMPANY, AND
COLUMBIA CASUALTY INSURANCE COMPANY,

                          Defendants.
_____/

## REPORT AND RECOMMENDATION

After several water intrusion episodes in her condominium, the Plaintiff, Danielle

Grandrimo, filed this action against her condominium association, Parkcrest Harbour Island

Condominium Association, Inc., and three insurers, USAA Casualty Insurance Company

("USAA"), Fidelity National Property and Casualty Insurance Company ("Fidelity"), and

Columbia Casualty Insurance Company ("Columbia").[1]  Plaintiff claims she sustained damage to

her personal and real property; she does "not know the precise source of the water intrusion other

than that it did not originate from within my unit or any physical area over which I had control."

See Afffidavit of Plaintiff, doc. 38, ¶ 8.  Defendant Parkcrest moves for summary judgment,

---

[1]  The original complaint named only Parkcrest, USAA, Fidelity, and another Defendant
Citizens Property Insurance, Inc. as Defendants.  The district judge entered an order dismissing
Defendant Citizens from this action on February 14, 2011, pursuant to Fed.R.Civ.P.
41(a)(1)(A)(I).  See doc. 20.  Plaintiff added Defendant Columbia as a Defendant in the amended
complaint dated February 16, 2011.  See doc. 21.  Columbia is one of Parkcrest's insurance
carriers which insured Plaintiff's condominium.  See doc. 33.  Fidelity is an insurer of Plaintiff's
personal property in the condominium.  See doc. 12, at 1.

asserting it did not owe or breach a duty to Plaintiff and that Plaintiff has failed to link the water intrusion and mold to any negligent acts or omissions by Defendant.  Defendant also maintains that the Plaintiff has not properly stated a claim for declaratory judgment (doc. 29).  After consideration, I recommend Defendant Parkcrest's Motion for Summary Judgment (doc. 29) be GRANTED.[2]

    *A.  Standard of Review*

    Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  *Celotex Corp. v. Catrett,*  477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly support summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.*   "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Celotex*, *supra*, at 325.     "Disposition of a summary judgment motion in a declaratory judgment action is governed by the same basic principles that generally rule the grant or denial of such a motion."  *Bingham Ltd. v. U.S.,* 724 F.2d 921, 924 (11th Cir. 1984).

---

    [2]  This matter is referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  *See* doc. 45.

*B.  Background*

Plaintiff, a medical doctor, purchased a condominium in April 2007 from Defendant

Parkcrest located in Harbour Island, Tampa, Florida.  Upon purchasing the condominium,

Plaintiff received a copy of the Declaration of Condominium (hereinafter "Declaration") as well

as a disclosure statement from the condominium's previous owner stating that there had been no

prior water intrusion incidents.  The Declaration provides, in pertinent part:

> (e) Mold and/or Mildew.  Mold and/or mildew can grow in any portion of the
> Condominium that is exposed to elevated levels of moisture. The Association and
> each Unit Owner agree to (i) regularly inspect the parts of the Condominium that
> they respectively maintain, and which are visible and accessible without having to
> first conduct invasive testing, for the existence of mold, mildew, and/or water
> intrusion (except when the water intrusion is part of the normal functioning of
> improvements and appliance such as showers, sinks, dishwashers, and other
> similar appliances and improvements) and/or damage; (ii) upon discovery,
> immediately repair in a good and workmanlike condition the source of any water
> intrusion in the parts of the Condominium that they respectively maintain; (iii)
> remediate or replace any building material located in the parts of the
> Condominium that they respectively maintain that has absorbed water or moisture
> as a result of water intrusion; and (iv) promptly and regularly remediate all mold
> and/or mildew discovered in the parts of the Condominium that they respectively
> maintain in accordance with current industry-accepted methods.  In addition, the
> Association agrees to notify Units Owners, and each Unit Owner agrees to notify
> the Association of the discovery of mold, mildew, and/or water intrusion and/or
> damage in the parts of the Condominium that they respectively maintain. ...
>
> Notwithstanding anything to the contrary herein, Declarant shall have no
> obligation to perform any invasive testing or inspections, maintenance or repairs
> in accordance with this Paragraph 15(e), and shall not be held liable for any loss
> or damage caused by the failure of the Association or a Unit Owner to perform
> their obligations herein.
>
> Declaration, p. 23.

The Declaration further provides:

> While the foregoing are intended to minimize the potential development of molds,
> fungi, mildew, and other mycotoxins, each Owner understands and agrees that

3

> there is no method for completely eliminating the development of molds or
> mycotoxins. The Developer does not make any representations or warranties
> regarding the existence or development of molds or mycotoxins and each Owner
> shall be deemed to waive and expressly release any such warranty and claim for
> loss or damages resulting from the existence and/or development of same.

Declaration, p. 55.

The Declaration also provides:

> The coverage must exclude all personal property within the unit or limited
> common elements and floor, wall and existing coverings, electrical fixtures,
> appliances, water heaters, water filters, built-in cabinets and counter-tops and
> window treatments, including curtains, drapes, blinds, hardware and similar
> window treatment components or replacements of any of the foregoing which are
> located within the boundaries of the unit and serve only such unit. Such property
> and any insurance thereupon is the responsibility of the unit-owner.

Declaration, p. 21.

Plaintiff has resided in her condominium since April 2007. Unfortunately, on or about June 2, 2007, she experienced a water intrusion episode causing damage to her personal property and to the condominium's carpet and wall boards. The cause or source of the water was not known, and remains unknown. The condominium association, through its developer, responded and replaced the carpet. Thereafter, on August 13, 2008, a second water intrusion episode occurred. This time, the cause was a toilet that had "backed up" due to a plugged common junction. Plaintiff filed a claim with her insurance company, USAA, and USAA covered the necessary repairs and hotel room, and Plaintiff paid a $500.00 insurance deductible.

On July 1, 2009, the condominium experienced a third water intrusion incident, causing damage to the condominium's interior walls, and other elements and damage to Plaintiff's personal property. Although Plaintiff timely filed an insurance claim with her carrier, USAA, Plaintiff eventually asked USAA to withhold repairs after USAA proposed to repair the surface

4

of her condominium without assessing the cause and origin of the water intrusion and

mold/mildew.  Plaintiff instructed USAA in this way because she was concerned that without

accurately identifying the underlying cause of the loss to her condominium, the loss could repeat

itself.  Plaintiff purports that without establishing the cause of the loss, a proper remediation

could not occur since the scope of remediation depends not only on the visible damage but on the

offending cause of loss too.  Further, even though the damage caused by the water intrusion

occurred inside her condominium, Plaintiff asserts that the source or cause of the damage came

from outside of her condominium from common element property maintained by Parkcrest.

Plaintiff maintains that Parkcrest owed her a duty to investigate, repair and remediate per Florida

statutes and the Declaration, and that it was negligent in its actions and omissions.

In its motion for summary judgment, Defendant argues that there are no material disputes

of fact, and that summary judgment is proper in its favor on the negligence and declaratory

judgment claims against it.  More particularly, Defendant asserts that Plaintiff's negligence claim

fails because it owed no duty to insure Plaintiff's personal property or the interior or any limited

common elements, and that there is no evidence of any mold or evidence linking the July 2009

water intrusion event to any mold.

### C.  Motion to strike

Plaintiff filed her personal affidavit in opposition to the motion for summary judgment,

and Defendant moves to strike paragraphs 5, 7, 11, 15-16 of it (doc. 42).  Per rule 56(e)(2), a

party opposing a motion for summary judgment "may not rely merely on allegations or denials in

its own pleading; rather, its response must– by affidavits or as otherwise provided in this rule–

set out specific facts showing a genuine issue for trial."  The rule provides that "[s]upporting and

opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* Moreover, a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation. *Bryant v. U.S. Steel Corp.*, 2011 WL 2150193, *1 (11th Cir. May 31, 2011) citing *Van T. Junkins & Assoc. v. U.S. Indus.*, 736 F.2d 656 (11th Cir. 1984).

The requirements of Rule 56(e) make it plain that affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper. "This court has consistently held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F.2d 1210, 1217 (11th Cir. 2000) quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). In *Leigh,* the Eleventh Circuit affirmed the district court's grant of summary judgment for defendant where the plaintiff relied only on his own affidavit which did not provide any specific facts sufficient to create a genuine issue for trial. The *Leigh* court stated that "one who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial."

Plaintiff's affidavit contains conclusory statements that "mold existed in my condominium at the time this lawsuit was filed as a result of a condominium property/ common element cause of loss," the "mold in my condominium unit was due to water intrusion that occurred in my condominium through no fault of my own," and that "I experienced adverse health conditions due to the mold in my condominium unit that, in my opinion as a licensed medical doctor, are not attributable to other sources," *See* Plaintiff's affidavit, doc. 38, ¶¶ 5, 7,

6

15.   I find that Plaintiff's conclusory assertions in paragraphs five, seven, and fifteen of her affidavit have no probative value and should be stricken.  Defendant seeks to strike paragraph 16 on Plaintiff's affidavit that states: "In reading and reviewing the Declaration of Condominium, I find the language in the related to mold coverage and common areas provision ambiguous, and I am unclear as to my rights and responsibilities under the contract."  *See* Plaintiff's affidavit, doc. 38, ¶ 16.  I find that paragraph sixteen should be stricken as it is conclusory and lacks specific supporting facts.

Defendant also seeks to strike paragraph 11 of Plaintiff's affidavit that states: As much as practicable, I took steps to minimize the damages and arrest the cause of the damage– including, but not limited to filing an insurance claim and restoration/ repair efforts." Defendant maintains that this statement contradicts Plaintiff's earlier deposition testimony wherein Plaintiff stated she disallowed partial remediation in lieu of full remediation and discussed that she was aware of the risk associated with remaining in a condominium containing mold.  I find that paragraph 11 does not contradict the earlier deposition testimony, and therefore, the Defendant's motion is not well taken as to this issue.

   *D.  Discussion*

      *1.  Declaratory Judgment*

In Count V, the Plaintiff alleges that she is "in doubt as to her rights under the terms of the Declaration of Condominium with Defendant Parkcrest, the insurance policy covering the common elements of the subject property, and Florida law– specifically Fla. Stat. 718.111 and Fla. Stat. 627.405."  Defendant asserts that Plaintiff's amended complaint fails to identify any specific portions of the documents she wishes construed, and that as a result the Plaintiff has

7

failed to present allegations from which this Court can determine the parties' rights.

With her amended complaint as a base, the Plaintiff embarks on a fishing expedition to ascertain which laws or contractual agreements show a controversy for this Court to resolve. When viewed properly, the declaratory judgment act is a legislative attempt to extend procedural remedies to comprehend relief in cases where technical or social advances have obscured or placed in doubt one's rights, immunities, status or privileges, it should not be permitted to foster frivolous or useless litigation to answer abstract questions, to satisfy idle curiosity, go on a fishing expedition or to give judgment that serve no useful purpose.[3] *Ready v Safeway Rock Co.*, 24 So. 2d 808 (Fla. 1946).  Moreover, the Declaration strictly governs the respective duties and responsibilities as between an association and the unit owners, and must be strictly construed. *Cali v. Meadowbrook Lakes View Condo. Ass'n.*, 59 So. 3d 363, 367 (Fla. 4th DCA 2011) citing *Woodside Vill. Condo. Ass'n v. Jahren*, 806 So. 2d 452, 456 (Fla. 2002); *Curci Vill. Condo Ass'n v. Maria*, 14 So. 3d 1175, 1177 (Fla. 4th DCA 2009).

There are six requisites for declaratory relief:  1)  a bona fide, actual, present and practical need for the declaration; 2)  a present ascertained or ascertainable state of facts or a present controversy about a state of facts; 3)  a power, privilege, immunity, or right of the party seeking relief must be dependent on the facts or the law applicable to the facts;  4)  another person or persons must have an actual, present, and adverse interest in the subject matter; 5)  the adverse

---

[3]  In her memorandum of law, the Plaintiff attempts to explain why she seeks a declaration of her rights.  She states "it is unclear as to whether or not Parkcrest has the obligation to remediate or replace any building material located within parts of the condominium which it controls" [and whether or not] Parkcrest must 'promptly and regularly remediate all mold and/or mildew discovered in the parts of the Condominium that they respectively maintain."  doc. 41, p. 9 quoting Declaration, p.23 (titled 15(e) Mild and Mildew).

8

interests must be before the court; and 6)  the declaration must not be merely giving legal advice. *Trawick, Fla. Prac & Proc.* §35:1 (2011 ed.) citing *May v. Holley,* 59 So. 2d 636 (Fla. 1952). Upon consideration, I find that the requisites are not met here, and recommend that summary judgment be granted in favor of the Defendant.  Furthermore, this Court cannot construe the parties' rights under the Declaration, as the parties have failed to provide a complete copy of the Declaration to the Court.  *See Deeb v. Field,* 311 So. 2d 736, 737 (Fla. 3rd DCA 1975) ("It is fundamental that in construing a contract, the intention of the parties must be determined from examination of the whole contract and not from the separate phrases or paragraphs.").

    *2.  Negligence*

    The elements of negligence under Florida law are: 1) a legal duty on the defendant to protect the plaintiff from particular injuries; 2) the defendant's breach of that duty; 3) the plaintiff's injury being actually and proximately caused by the breach; and 4) the plaintiff suffering actual harm from the injury."  *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)).  The duty element of a negligence claim "focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others."  *McCain v. Fla. Power Corp.,* 593 So. 2d 500, 502 (Fla. 1992).  A duty may arise from four general sources: "1) legislative enactments or administrative regulations; 2) judicial interpretations of such enactments or regulations; 3) other judicial precedent; and 4) a duty arising from the general facts of a case."  *Curd v. Mosaic Fertilizer, LLC*, 39 So. 2d 1216, 1227-28 (Fla. 2010) (citing *Clay, supra,* 873 So. 2d at 1185).  "The fourth category encompasses 'that class of cases in which the duty arises because of a foreseeable zone of risk arising from the acts of the defendant.'"  *Id.*

9

(Citing *McCain, supra,* 593 So. 2d at 503 n.2).  By count VIII (negligence) , the Plaintiff alleges that Defendant breached four duties owed to Plaintiff, and I will discuss each separately below.[4]

     *a.  insurance*

Plaintiff alleges "[b]oth under statute and under the terms of the Declarations of Condominium, Defendant owed a duty to Plaintiff to exercise due care in connection with the procurement and placement of both liability and property insurance which would provide sufficient, agreed-upon coverage to common element property (as per the Declarations of Condominium)" (¶100).  Plaintiff further alleges that "Parkcrest breached that duty when it failed to procure adequate insurance coverage for the subject water loss to Plaintiff, such that it would compensate Plaintiff for all of the damages sustained through no fault of her own" (¶ 101).  And, Plaintiff alleges that "Parkcrest's actions and omission in not securing adequate insurance for the common elements of the Parkcrest Harbour Island Condominium is the proximate case and cause in fact of Plaintiff's damages."  (¶102).

Defendant states summary judgment in its favor is proper because the Plaintiff cannot prove the elements of duty, causation, and damages, and that Fla. Stat. §718.111(11)(d) requires only that it use best efforts to obtain and maintain adequate property insurance coverage.  This statute provides that "[a]n association controlled by unit owners operating as a residential condominium shall use its best efforts to obtain and maintain adequate property insurance to protect the association, the association property, the common elements, and the condominium property that must be insured by the association pursuant to this subsection."  Fla. Stat.

---

[4]  The Defendant identified three duties, however my review of the amended complaint shows that the Plaintiff identified four duties allegedly breached by Defendant.  *See* amended complaint, ¶¶ 98-118.

§718.111(11)(d).  Defendant also cites to Fla. Stat. § 718.111(11)(f)(3) that provides:

> coverage must exclude all personal property within the unit or limit common
> elements and floor, wall and existing coverings, electrical fixtures, appliances,
> water heaters, water filters, built-in cabinets and counter-tops and window
> treatments, including curtains, drapes, blinds, hardware and similar window
> treatment components or replacements of any of the foregoing which are located
> within the boundaries of the unit and serve only such unit.  Such property and any
> insurance thereupon is the responsibility of the unit-owner.

Defendant states that few, if any, insurance policies currently cover mold, mildew, or microbial

conditions and that as a matter of law it had no duty to insure Plaintiff's personal property.

While Plaintiff alleges in her amended complaint that "under statute" the Defendant owed

Plaintiff a duty to procure liability and property insurance, she fails to identify or prove such a

statutory duty.   Likewise, I find that she has failed to identity any part of the Declaration that

created a duty or that Defendant breached any duty with regard to the procurement of insurance.

Taking the facts in the light most favorable to Plaintiff, I find that there is an absence of evidence

to support Plaintiff's negligence claim.  *See Celotex, supra,* at 325.  Because the undisputed facts

fail to establish duty, breach, and causation, the Defendant has met his burden, and summary

judgment is proper.  Hence, I recommend the Defendant's motion for summary judgment be

granted with regard to the Plaintiff's negligence claim arising from the breach of duty to Plaintiff

to exercise due care in connection with the procurement and placement of both liability and

property insurance which would provide sufficient, agreed-upon coverage to common element

property.

### b.  inspect and maintain

Second, Plaintiff alleges that "[u]nder the Declarations of Condominium, Defendant

Parkcrest owed Plaintiff a duty to adequately inspect and maintain the common elements and

11

limited common elements of the condominium property such that they would not cause damages to Plaintiff's condominium property." (¶105). Plaintiff alleges that "Defendant Parkcrest failed to adequately inspect and maintain the common elements and limited common elements of the condominium property such that they would not cause damages to Plaintiff's condominium property despite being placed on notice by Plaintiff to the existence of ongoing losses." (¶106). "Defendant Parkcrest failed to repair and mitigate damages to Plaintiff's condominium and limited common elements despite being placed on notice by Plaintiff to the existence of ongoing losses." (¶107). "Defendant Parkcrest failed to delegate the duty to adequately inspect and maintain the common elements and limited common elements of the condominium property such that they would not cause damages to Plaintiff's condominium property to a qualified property manager." (¶108). "Defendant Parkcrest's actions and omission in failing to adequately inspect, maintain, and repair the common elements and limited common elements of the condominium property such that they would not cause damages to Plaintiff's condominium property are the proximate cause and cause in fact of Plaintiff's damages. (§109).

In response, Defendant cites to the Declaration insofar as it indicates the "Association shall not be liable for injury or damage to person or property caused by the elements of by the Owner of any Unit, or any other person, or resulting from any utility, rain which may leak or flow from any portion of the Common Elements or from any pipe, drain, conduit, appliance or equipment which the Association is responsible to maintain hereunder, except for injuries or damages arising after the Owner of a Unit has put the Association on notice of a specific leak or flow from any portion of the Common Elements and the Association has failed to exercise due care to correct the leak or flow within a reasonable time thereafter." *See* Declaration, p.21.

12

Plaintiff alleges the cause of the first and third water intrusions are unknown.  There is a lack of evidence that the Plaintiff's alleged injuries, both personally and to her property, were proximately caused by a breach of duty by the Defendant.  Even construing the facts in the light most favorable to the Plaintiff, I find summary judgment proper with regard to the negligence claim arising from Defendant's duty to adequately inspect and maintain the common elements and limited common elements of the condominium property such that they would not cause damages to Plaintiff's condominium property, as there is an absence of evidence concerning the essential elements of duty, breach, and causation.

<em>c.  expert</em>

Third, Plaintiff alleges "Parkcrest owed a duty to timely secure a licensed indoor air quality expert/ certified industrial hygenist to determine the condition of the apartment and prepare a set of mold remediation protocols consistent with acceptable standards, given the presence of toxic mold is a known public health risk." (¶113).  "Defendant Parkcrest breached that duty by failing to promptly secure an expert to investigate the condition of the apartment and to prepare a set of mold remediation protocols, despite being put on notice by Plaintiff to the existence of onging losses." (¶114).

The Declaration states that Defendant "shall have no obligation to perform any invasive testing or inspections, maintenance or repairs in accordance with this Paragraph 15(e) [titled "Mold and/or Mildew"], and shall not be held liable for any loss or damage caused by the failure of the Association or a Unit Owner to perform their obligations herein."  *See* Declaration, p.23.  Looking at the facts in the light most favorable to the Plaintiff, I find that the Declaration clearly provides that the Defendant is not obliged to test or inspect and shall not be held liable for any

13

damages arising from its failure to do so.  Hence, summary judgment is proper because there is

an absence of evidence as to a requisite element of Plaintiff's claim.  I recommend summary

judgment in Defendant's favor with regard to the negligence claim arising from Defendant's

breach of its duty to timely secure a licensed indoor air quality expert/ certified industrial

hygenist to determine the condition of the apartment and prepare a set of mold remediation

protocols consistent with acceptable standards.

### d.  adjoining landowner duty

Finally, Plaintiff alleges that "Defendant Parkcrest had a duty as an adjoining land owner

of common element property to ensure its property did not interfere with the use and enjoyment

of Plaintiff's property." (¶116), and that "Defendant Parkcrest breached its duty to Plaintiff by

failing to repair a leak in its common element property which led to water being leaked into

Plaintiff's unit causing and encouraging the growth of mold in the Plaintiff's unit." (¶117).

Taking the facts in the light most favorable to Plaintiff, I find that there is an absence of

evidence to support Plaintiff's negligence claim.  *See Celotex, supra,* at 325 ("In cases like the

instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive

issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

depositions, answers to interrogatories, and admissions on file' . . . and Rule 56(e) therefore

requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by

depositions, answers to interrogatories, and admissions on file, designate specific facts showing

that there is a genuine issue for trial.").  In granting summary judgment for defendant, the *Celotex*

Court stated that "one of the principal purposes of the summary judgment rule is to isolate and

dispose of factually unsupported claims or defenses." *Id.* at 323-24.  As in *Celotex,* because the

undisputed facts fail to establish duty, breach, and causation, the Defendant has met his burden, and summary judgment is proper.  Moreover, per rule 56(e)(2), I find that the Plaintiff has failed to present by affidavit or otherwise specific facts showing a genuine issue for trial.  Relying upon her allegations in her amended complaint, her general reference to Fla. Stat. § 718.111(4) in her memorandum of law, and her and her roommate's affidavits are insufficient to defeat summary judgment.[5]

   *E. Conclusion*

   "Rule 56 must be construed with due regard not only for the rights of persons assserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."  *Celotex,* 477 U.S. at 327.  Accordingly, for the reasons set forth herein, it is

   RECOMMENDED:

   1.  Defendant Parkcrest's Motion for Summary Judgment (doc. 29) be GRANTED.

   2.  That Defendant Parkcrest's Motion to Strike Plaintiff's Affidavit be GRANTED as to paragraphs 5, 7, 15, and 16 and DENIED as to paragraph 11.

   REPORTED at Tampa, Florida on July 27, 2011.

   *Mark A. Pizzo*
   MARK A. PIZZO
   UNITED STATES MAGISTRATE JUDGE

---

   [5] Fla. Stat. 718.111(4) states that "The association has the power to make and collect assessments and to lease, maintain, repair, and replace the common elements or association property..."  This section does not create any duties.

15

## <u>NOTICE TO PARTIES</u>

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).